Filed 9/11/25  In re B.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re B.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E085035 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J301385-86) |
| v. | OPINION |
| M.D. et al., | |
| Defendants and Appellants; | |
| B.R. et al., | |
| Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant, Z.R.

1

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant, M.D.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Appellants B.R. et al..

Tom Bunton, County Counsel, and Kristina M. Robb, Deputy County Counsel for Plaintiff and Respondent.

In this juvenile dependency appeal, the mother, father, and minors each argue that the juvenile court erred at the combined jurisdictional and dispositional hearing, albeit in different ways. The parents argue that the jurisdictional finding of sexual abuse (Welf. & Inst. Code, § 300, subd. (d)) lacked substantial evidence. The minors argue that the juvenile court erred by providing father services when it should have found that bypass applied. We affirm in full.[1]

## I. BACKGROUND

Plaintiff and respondent San Bernardino County Children and Family Services (CFS) became aware of minors B.R. (born 2022) and V.R. (born 2018) in June 2024. Their adult sibling, A.R., disclosed several incidents of sexual abuse occurring years ago, when A.R. was 12 years old, over a period of a few weeks or months. In one incident, defendants and appellants M.D. (mother) and Z.R. (father) called A.R. into the living room and asked if she knew "what sex was." The parents then started to "make out" and

---

[1] Undesignated statutory references are to the Welfare & Institutions Code.

asked A.R. "if she wanted to join them and who would she like to kiss." A.R. also said father repeatedly watched her while she was showering. A.R. said father required A.R. to leave the shower curtain open while showering. In a third incident, father followed A.R. into the bedroom after she finished showering and told her to "get on all fours and arch her back." Father then visually examined A.R.'s hymen from a few feet away. In a fourth incident, the parents invited A.R. "into their bed to be with them while they had sexual intercourse." A.R. testified that she went to the bed and fell asleep but "knew that they were doing it because the next morning my dad said that . . . my mom was, um, being extra loud." In a fifth incident, father had A.R. take off her shirt, and father caressed A.R.'s breasts for approximately a minute, telling her they were "nice." In a sixth incident, mother dared father "to press his penis up against a handheld mirror." In a seventh incident, father showed A.R. a video of mother performing oral sex on him. In an eighth incident, father showed A.R. other pornographic videos. In a ninth incident, father "flashed himself" to A.R. In a tenth incident, father "honked" A.R.'s breasts. The parents were arrested.

The dependency petitions alleged failure to protect and sexual abuse. (See § 300, subds. (b), (d).) The petitions alleged that each of the parents sexually abused A.R. and that, as a result, the minors were at substantial risk of being sexually abused or suffering serious physical harm. In other words, each petition raised an allegation under section 300, subdivision (b) against each parent as well as an allegation under section 300, subdivision (d) against each parent, all stemming from the parents' actions toward A.R.

3

(See § 300, subds. (b) [substantial risk child will suffer serious physical harm sufficient for jurisdiction], (d) [same regarding sexual abuse].)  The juvenile court detained both minors.

Following a contested hearing where A.R. testified, the juvenile court sustained the allegations as pled.  Over the objection of the minors, who through counsel argued that father should not receive services, the juvenile court ordered reunification services for both parents.[2]  It noted that the bypass provision at issue, section 361.5, subdivision (b)(6), did not apply to father because his actions did not constitute "severe" sexual abuse.  (See § 361.5, subd. (b)(6)(A) [no reunification services to be provided when court finds, by clear and convincing evidence, "[t]hat the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse . . . to . . . a sibling . . . by a parent or guardian"].)

## II.  DISCUSSION

Mother, father, and the minors argue that the juvenile court's jurisdictional and dispositional findings err in different ways.  Mother argues that substantial evidence does not support the sexual abuse finding against her.  Father argues that substantial evidence does not support the sexual finding against him.  And the minors argue that father should not have been given services because his actions constituted severe sexual abuse.

---

[2]  The minors argued that mother should receive services.  Although CFS recommended that no services be provided to either parent in its jurisdiction/disposition report, at the combined jurisdiction and disposition hearing, CFS argued that both parents should receive services.

4

We begin with a threshold issue raised by CFS, which is that the parents' substantial evidence challenges are not justiciable because the juvenile court would still have jurisdiction over the minors even if we were to reverse one or both of the parents' sexual abuse findings.

"A court is tasked with the duty '"to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the manner in issue in the case before it."' [Citation.] A case becomes moot when events '"render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief."'" (*In re D.P.* (2023) 14 Cal.5th 266, 276.) As relevant here, "where there are multiple findings against one parent[,] the validity of one finding may render moot the parent's attempt to challenge the others." (*Id.* at p. 284.) Thus, as CFS correctly observes, because the juvenile court's findings under section 300, subdivision (b) are unchallenged, the sexual abuse jurisdictional challenges are moot.[3]

_____

[3] A case is not moot if it has resulted in dispositional orders that continue to adversely affect a parent. (*In re D.P.*, *supra*, 14 Cal.5th at pp. 277-278; see *In re Jayden A.* (2025) 111 Cal.App.5th 1334, 1345 [applying exception].) Although unclear, mother appears to rely on this exception to mootness, arguing that the dispositional orders adversely affect her because they require that she admit to the sexual abuse to complete her case plan, and she argues she committed no such abuse. We do not construe the exception to apply under such circumstances. Because mother's purported challenge to the dispositional orders relies solely on whether the sexual abuse jurisdictional finding was proper—in other words, there is no means by which the dispositional orders could be reversed outside of the correctness of the jurisdictional finding—it is not properly treated as a challenge to the dispositional order. Not only is there no distinct argument of error, finding otherwise risks allowing the exception to swallow the mootness rule.

Nevertheless, "[e]ven when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*In re D.P.*, *supra*, 14 Cal.5th at p. 282.) "The exercise of discretionary review may . . . be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct. [Citations.] Though stigma alone will not sustain an appeal, a court may consider the nature of the allegations against the parent when deciding whether discretionary review is proper. The more egregious the findings against the parent, the greater the parent's interest in challenging such findings." (*Id.* at pp. 285-286.) Findings that a parent has sexually abused a child are undoubtedly pernicious and stigmatizing. Moreover, "[b]ecause dismissal of an appeal for mootness operates as an affirmance of the underlying judgment or order [citation], such dismissals may '"ha[ve] the undesirable result of insulating erroneous or arbitrary rulings from review"' [citation]. This can pose issues not only for the parents subject to such findings, but also for state agencies that rely on such findings in the course of their duties, including child protective agencies, the State Department of Social Services, child support agencies, and school district officials." (*Id.* at p. 285.) We will therefore exercise our discretion and address the merits.

A. *Jurisdictional Findings*

Substantial evidence supports the finding that the minors are at substantial risk of being sexually abused by both parents. Section 300, subdivision (d) defines sexual abuse by reference to Penal Code section 11165.1, which in turn lists several examples of what would qualify as sexual abuse. One such example is conduct that would constitute child

molestation (Pen. Code, §§ 11165.1, subd. (a), 647.6), which "does not require a touching . . . but does require (1) conduct a '"normal person would unhesitatingly be irritated by"' [citation], and (2) conduct '"motivated by an unnatural or abnormal sexual interest"' in the victim" (*People v. Lopez* (1998) 19 Cal.4th 282, 289). The first incident described above, where A.R. was invited by her parents to join them in "making out," satisfies that definition.

Mother emphasizes that A.R. could not remember which parent asked her whether she would like to join them. However, a child in A.R.'s position would have understood the invitation to "make out" to be from both parents, regardless of who verbalized it, given that neither parent appeared bothered by the invitation. Despite what mother suggests, it makes no difference that A.R. left the room and was not coerced in any way, as coercion is not an element of child molestation.

Father does not address the "making out" incident in his substantial evidence challenge. Both he and mother generally focus on arguing that other incidents would not satisfy other examples of what constitutes sexual abuse. For our purposes, it does not matter specifically how each alleged incident qualifies as sexual abuse, if at all, so long as one satisfies the definition. Because the finding that the "making out" incident qualifies as sexual abuse applies equally to father as to mother, we need not address whether father's other actions constituted sexual abuse, although we note that several of the more serious allegations involved only father, such as his caressing of A.R.'s breasts and showing her pornography.

7

Father argues that, even if he sexually abused A.R., there was no substantial evidence the minors were at substantial risk of sexual abuse. We disagree. As our Supreme Court has stated, "'[s]ome risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great.'" (*In re I.J.* (2013) 56 Cal.4th 766, 778.) Moreover, it is the type of abuse that matters, not necessarily the severity. (See *ibid.* ["the more severe the type of sibling abuse, the lower the required probability of the child's experiencing such abuse to conclude the child is at a substantial risk of abuse or neglect under section 300"].) As a result, because the type of abuse at issue here is sexual abuse, the degree of probability required is low. It therefore matters little that, as father argues, the incidents occurred several years ago or that B.R. is male. "The juvenile court need not compare relative risks to assume jurisdiction over all the children of a sexual abuser." (*Id.* at p. 780; see also *id.* at pp. 779-780 [assumption that "father's other daughter is at greater risk of sexual abuse than are his sons" "does not mean the risk to the sons is nonexistent or so insubstantial that the juvenile court may not take steps to protect the sons from that risk"].) Specifically as to V.R., we agree with the juvenile court's observation that she is now "not far off" from the age A.R. was at the time of the incidents, "so where sexual interest is piqued, we're at the same risk, and that is coming up soon, and that does require intervention to protect the child." Accordingly, we find that substantial evidence supports the section 300, subdivision (d) findings as to both mother and father.

*B. Bypass*

The minors argue that the juvenile court erred in finding that the bypass provision did not apply to father and providing reunification services for him. We disagree.

"""It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system."' [Citation.] Because family preservation is so important in the early stages of a dependency, the Legislature has applied to reunification services a statutory presumption and heightened standard of proof. [Citation.] Thus, when a child is removed from the custody of their parent, the juvenile court *must* provide the parent with reunification services *unless* it finds by clear and convincing evidence the case falls within one of the 17 enumerated exceptions in section 361.5, subdivision (b), commonly called 'bypass provisions.' (See § 361.5, subd. (a).) If the court finds by clear and convincing evidence that a bypass provision applies, it must deny services unless the parent proves that services would be in the child's best interests. (§ 361.5, subd. (c).) While the parent bears the burden of proof on that issue, the department bears the burden of proving the threshold issue of whether a bypass provision applies." (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1148.)

Where, as here, the issue turns on a failure of proof, "the question for a reviewing court [is] whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"

9

(*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, fn. 7.) The minors have not made such a showing on this record.

The bypass provision at issue, section 361.5, subdivision (b)(6), requires bypass if the juvenile court finds by clear and convincing evidence that "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm to . . . a sibling . . . by a parent . . . and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian." (§ 361.5, subd. (b)(6)(A).) The statute then lists several nonexclusive examples of what would constitute severe sexual abuse: "A finding of severe sexual abuse, for the purposes of this subdivision, may be based on, but is not limited to, sexual intercourse, or stimulation involving genital-genital, oral-genital, anal-genital, or oral-anal contact, whether between the parent or guardian and the child or a sibling or half sibling of the child, or between the child or a sibling or half sibling of the child and another person or animal with the actual or implied consent of the parent or guardian; or the penetration or manipulation of the child's, sibling's, or half sibling's genital organs or rectum by any animate or inanimate object for the sexual gratification of the parent or guardian, or for the sexual gratification of another person with the actual or implied consent of the parent or guardian." (*Id.* at subd. (b)(6)(B).)

The juvenile court found that the provision did not apply because father's actions did not constitute severe sexual abuse. As it noted when discussing its tentative decision, although there was a criminal case and jury instructions stating that breasts are an "intimate part of the body . . . it doesn't use the word 'genitalia,'" so the term did not appear to encompass breasts and father's behavior did not satisfy any of the examples listed in the statute. It also noted that the statute allows for a "catchall" in that behavior not directly listed as an example of severe sexual abuse could nevertheless qualify because the list was nonexclusive.

The minors' evidence that the bypass provision should have applied to father is not "'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.) Although A.R. reported several incidents of disturbing behavior, none involved physical contact with A.R. other than with her breasts, and only two of the ten incidents involved such contact. As to the juvenile court's statement that there are no authorities defining genitalia to include breasts, the minors have not provided contrary authority on appeal or argument as to why the term should be so construed. They also do not attempt to extrapolate rules, based on the examples given in the statute, to help guide a court in differentiating sexual abuse from severe sexual abuse. Although the minors emphasize the emotional damage the parents' actions had on A.R., we note that section 361.5, subdivision (b)(6)(C), which defines severe physical *harm*, includes a residual category for "any other torturous act or omission that would be reasonably understood to cause

11

serious emotional damage," but the subdivision defining severe sexual abuse does not include a similar provision.  In sum, the juvenile court was not compelled as a matter of law to find that father committed severe sexual abuse.

The minors also argue that the juvenile court abused its discretion in construing the bypass statute.  Specifically, they argue that it was unaware of the full extent of its discretion because it appeared inclined to define genitalia to include breasts only if the definition was supported by preexisting legal authority.  (See *In re S.G.* (2021) 71 Cal.App.5th 654, 673 [""If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law""].)  They rely on the juvenile court's statement that "I think the state of the law right now is they want to stay within what's actually defined, even though there is a catchall."

The juvenile court also stated, however, that "[t]here could be a case one day that's suited for that, but, frankly speaking, on this case, I don't believe this case would rise to that catchall."  It thus acknowledged that an expansion of the definition of severe sexual abuse might be warranted on a different record.  It made the same acknowledgment when it stated that "pretty much it's very, very hard to connect the dots on a catchall to a bypass."  When making its ruling, it yet again made such an acknowledgment, stating that "[t]here is a catchall that allows other things, but at this point in time, based on the totality of the circumstances, scenario[,] I don't believe this would qualify for even a catchall."  It then stated it was "leery of the catchall" because it

12

lacked "good foundational support" before acknowledging that "[i]t's more discretionary to the Court as to what I believe would constitute severe sexual abuse." Reading the record as a whole, we are unconvinced that the juvenile court believed it lacked any power to find instances of severe sexual abuse other than those listed in the statute. Rather, it chose not to do so here on the facts before it.

## III.  DISPOSITION

The jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

MILLER

Acting P. J.

CODRINGTON

J.